IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA (Washington, D.C.)

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **No. 21 CR 731 (RC)** |
| v. ) | **Judge Rudolph Contreras** |
| ) | |
| **LAWRENCE LIGAS** | |

## MOTION TO DISMISS COUNT ONE OF THE INDICTMENT

Now comes the defendant, LAWRENCE LIGAS, by and through his attorney,

PIYUSH CHANDRA, FEDERAL DEFENDER PROGRAM, Northern District of Illinois,

and pursuant to F.R.C.P. 12(b)(3)(B)(v), hereby moves this Honorable Court to dismiss

Count One of the Indictment charging obstruction of an official proceeding in violation

of 18 U.S.C. §§ 1512 (c)(2) and 2.

### I.    Introduction.

This Court should dismiss Count One for three reasons. First, the government

failed to allege, and will be unable to establish, the Supreme Court's requirement that

Mr. Ligas impaired the availability or integrity of records, documents, objects, or other

evidence to be used in the proceeding as required by *Fisher v. United States*, 144 S. Ct.

2176. Second, 18 U.S.C. § 1512 (c)(2) only prohibits the corrupt obstruction of tribunal-

like proceedings before Congress related to the administration of justice. It does not

prohibit the obstruction of a ceremonial proceeding before Congress like the

certification of the Electoral College Vote. Thus Mr. Ligas's alleged obstruction of the

1

certification of the electoral college vote is not a crime under 18 U.S.C. § 1512 (c)(2).

Third, Section 1512 (c)(2) is unconstitutionally vague in that "corruptly" is undefined

and itself vague.

## II.     Count One fails to allege conduct that "Otherwise Obstructs, Influences, Or Impedes An Official Proceeding" as required by *Fisher v. United States*.

In Count One, the Indictment alleges that, on or about January 6, 2021, within the

District of Columbia and elsewhere, Lawrence Ligas "attempted to, and did, corruptly

obstruct, influence, and impede an official proceeding, that is, a proceeding before

Congress, specifically, Congress's certification of the Electoral College vote as set out in

the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18."

Dkt. # 49.

At the conclusion of the Supreme Court's opinion in *Fischer v. United States*, 144

S. Ct. 2176 (June 28, 2024) the majority held that:

> To prove a violation of Section 1512(c)(2), the Government must
> establish that the defendant impaired the availability or integrity for use
> in an official proceeding of records, documents, objects, or as we earlier
> explained, other things used in the proceeding, or attempted to do so.

*Id.* at 2190.

In deciding the scope of §1512(c)(2), the Court adhered to an interpretation that

would "'give effect, if possible, to every clause and word of [the] statute,'" while

considering the broader context of § 1512 as a whole. *Id.* at 2183 (citing *Williams* v.

*Taylor*, 529 U. S. 362, 404 (2000); *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 341 (1997)).

The Court explained that § 1512(c)(1) describes particular types of criminal conduct

in specific terms, whereas (c)(2) functions as a residual clause for "'matters not

specifically contemplated'" by (c)(1). *Id.* (citing *Republic of Iraq* v. *Beaty*, 556 U. S. 848, 860 (2009)). To discern the scope of (c)(2), the Court relied upon the canon of *noscitur a sociis*, which teaches that a word is "'given more precise content by the neighboring words with which it is associated.'" *Id.* (citing *United States* v. *Williams*, 553 U. S. 285, 294 (2008)). And according to the related canon of *ejusdem generis*, a general or collective term at the end of a list of specific items is typically controlled and defined by reference to those specific items that precede it. *Id.* at 2184 (citing *Southwest Airlines Co.* v. *Saxon*, 596 U. S. 450, 458 (2022)). The Court stated "[t]hese approaches to statutory interpretation track the common sense intuition that Congress would not ordinarily introduce a general term that renders meaningless the specific text that accompanies it." *Id.*   The Court held that "[T]he broader context of Section 1512 in the criminal code confirms that (c)(2) is limited by the scope of (c)(1). *Id.* at 2187.

The Court thus limited the availability of § 1512(c)(2) to the prosecution of defendants who obstruct, influence, or impede an official proceeding through the impairment of the availability or integrity for use in an official proceeding of records, documents, objects or other things such as witness testimony or intangible information. *Id.* at 2190. Any broader interpretation of subsection (c)(2) would criminalize conduct that otherwise may be protected by the First Amendment. Indeed, it would expose activists, lobbyists, and mere protesters to the statute's 20-year maximum sentence for conduct that Congress generally saw fit to punish with far shorter sentences.

Count One of the indictment does not allege that Mr. Ligas impaired the

3

availability of records, documents, objects, or other such things, or that he did so
corruptly, in order to impede an official proceeding.

As to the facts in this case, according to the discovery provided and the
government's filed complaint, Mr. Ligas entered the East Rotunda door with a mass of
other people, walked around the taking pictures of the Rotunda and the people in it. He
remained in the Rotunda for approximately 8 minutes and then went back outside. Dkt.
#1, p. 3. Based on counsel's review of the provided discovery, Mr. Ligas never left the
Rotunda or engaged in any behavior indicating an attempt to enter any other office,
chamber, or room, where one would reasonably expect to find evidence or documents
for use at the certification proceeding.

Based on the holding in *Fisher v. United States*, the government has failed to
allege or establish a violation of §1512(c)(2). Mr. Ligas respectfully asks that Count One
of the indictments containing this charge be dismissed.

**III.    Section 1512(c)(2) prohibits obstructing only "official proceedings," which are
tribunal-like proceedings relating to the administration of justice.**

Congress defined the term "official proceeding" for purposes of Sections 1512 and
1513 in Section 1515(a)(1), as follows:

> (A) a proceeding before a judge or court of the United States, a
> United States magistrate judge, a bankruptcy judge, a judge
> of the United States Tax Court, a special trial judge of the Tax
> Court, a judge of the United States Court of Federal Claims,
> or a Federal grand jury;
> (B) a proceeding before the Congress;
> (C) a proceeding before a Federal Government agency which is
> authorized by law; or

4

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

The language of the statute suggests that the term "official proceeding" refers to tribunal-like proceedings relating to adjudication, deliberation, and the administration of justice, all features which the electoral count lacks. As such, though the counting of the electoral vote takes place before Congress, it is not an "official proceeding."

A.      *The text in and around Sections 1515 and 1512 support this view.*

The "plain meaning of § 1512(c)(2) and § 1515(a)(1)(A) is unambiguous—an informal, routine agency action like clearance-adjudication does not fall within the statutory definition of an "official proceeding." *U.S v. Guertin*, 1:21-CR-262 (TNM), 2022 WL 203467, at *6 (D.D.C. Jan. 24, 2022). Instead, an "official proceeding" must "resemble a formal tribunal." *Id.* at *7. By the rationale applied in *Guertin*, the electoral count likewise does not qualify as an "official proceeding."

In *Guertin*, the court began by noting that "official proceeding" can have a broad or narrow definition. The court found for good reason that the narrow definition must be applied. *Id.* at *6. The court then went on to analyze the text of 1512(c)(2), observing that "official" appears before "proceeding," thus "textually limiting covered proceedings to those bearing indicia of officiality." *Id* at *7. Next, the court found that the definitional provisions in 1515(a)(1) support that reading, observing that the "word 'before' suggests an 'official proceeding' would typically entail convening a formal tribunal or adjudicative

5

body before which parties are compelled to appear." *Id.* (emphasis omitted). After careful textual analysis, the court held that taken together, Sections 1515(a)(1) and 1512 make clear that "a covered 'proceeding before a Federal government agency' must resemble a formal tribunal." *Id.*; *see also United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013) (analyzing the text in and surrounding Sections 1515 and 1512 to determine that the phrase "a proceeding before a Federal Government agency which is authorized by law" in Section 1515(a)(1)(C) does *not* include FBI investigations); *United States v. Ramos,* 537 F.3d 439, 462–63 (5th Cir. 2008) (stating that "use[ of] the preposition 'before' in connection with the term 'Federal Government agency' . . . implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency."). The foregoing analysis demonstrates that Section 1515(a)(1)(B), and therefore Section 1512(c)(2), which relies on that definition, does not include the counting of electoral votes.

      B.    *The electoral count is not an official proceeding because it is a ceremonial event.*

Just as the "criminal investigation" in *Ermoian* and the "routine certification" in *Guertin* did not meet the definition of an "official proceeding" under the obstruction of justice statute with this full context, the election certification proceedings here also do not qualify. Indeed, when considering Congress's role in counting electoral votes pursuant to the 12th Amendment and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15, it is clear that the electoral count is a ceremonial and administrative event, bearing no resemblance to a tribunal. The Twelfth Amendment and 3 U.S.C. § 15 place responsibility

on Congress to count electoral votes *after* the states have already heard disputes and certified the vote. *See Bush v. Gore*, 531 U.S. 98, 113 (2000) (Rehnquist, J. concurring) (the "State's selection of electors shall be conclusive, and shall govern in the counting of the electoral votes."). The Joint Session does not have the power under the Constitution to reject the votes of any State. *See* Vasan Kesavan, *Is the Electoral Count Act Unconstitutional?*, 80 N.C. L. Rev. 1653, 1709 (2002) [hereinafter Kesavan].

Thus, though the election certification proceedings may be "official," no one is "before" the Congress in those proceedings, the proceedings entail no formal investigation or consideration of facts, and there is little to no discretion on the part of the Joint Session of Congress and its Presiding Officer. No parties are summoned to attend the proceedings; no witness or evidence is produced, offered, or taken; and nothing is adjudicated by Congress. As such, the certification proceedings are nothing like tribunal proceedings, and have nothing in common with the "business done in courts" or acts "done by the authority or direction of the court, express or implied." *See Ermoian*, 752 F.3d at 1170 ("'Proceeding' is a word much used to express the business done in courts and 'is an act done by the authority or direction of the court, express or implied.'") (quoting *Black's Law Dictionary* (8th ed. 2004)). Instead, the vote count is entirely ministerial and ceremonial.

The history of "objections" lodged at the Electoral Count further demonstrate the ceremonial nature of the electoral count. Past objections were mostly made in the 1800s because of the confusion regarding when new states were admitted to the union and how that impacted their votes. Objections were ultimately rejected because it was determined

that the Joint Session did not have the authority to judge the proceedings already had in the states. *See* Kesavan, *supra*, at 1678–94. In 1876, the most tumultuous American election thus far, Samuel Tilden and Rutherford Hayes were separated by one electoral vote and four states sent multiple electoral returns to Congress. *Id.* Congress recognized that the Joint Session did not have the authority to resolve the issue, and so instead, it formed a separate commission to sort through the chaos and decide the issues of fact and law presented. *Id.* To address issues like this in the future, Congress enacted the Electoral Count Act of 1887, giving states the responsibility of resolving disputes about electors and their appointments and certifications. Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 Fla. L. Rev. 540, 543 (July 2004).

In 1969, there was an objection that a vote sent up to Congress from North Carolina should not be counted because it reflected the "faithless" elector who had refused to give his vote to Richard Nixon, despite Nixon winning the popular vote in that state. The objection was rejected, and the vote at issue counted, because of the strong reminder of representatives such as R. Rarick, who said:

> We are not election supervisors nor given the discretion to re-compute the vote received from a sovereign state. The Constitution clearly proscribes our duty as to 'count the electoral votes,' the *ministerial* function of a central collecting agency and a tabulating point.

*See* Kesavan, *supra,* at 1694, 2022 (emphasis added).

For all these reasons, the Electoral Count is not "a proceeding" akin to a formal hearing, nor it is "tribune-like," both of which this Court required in *Guertin*. Rather, it is a ceremonial meeting of both houses of Congress. While steeped in tradition, it decides

8

nothing. It is a political performance conducted to give the country a feeling of finality over the already final election results. As a result, the Electoral Count is not an "official proceeding," and Count One of the Indictment should be dismissed.

IV.     **Section 1512(C)(2) is unconstitutionally vague because "corruptly" is vague.**

The Court should dismiss this Count for a third and related reason, which is that Section 1512(c)(2) as applied to Congressional proceedings fails to provide constitutionally required notice of what the statute prohibits, because the contextual meaning of "corruptly" is vague. In the alternative, the only construction of "corruptly" that might enable the statute to pass constitutional muster would require acting with the intent to obtain an unlawful advantage for oneself or an associate, contrary to the due administration of justice. But because Count One of the Indictment against Mr. Ligas fails to allege anything relating to the administration of justice, the Court should dismiss Count One in any case.

In order to comply with the requirements of due process, a statute must give fair warning of the prohibited conduct. *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964). A statute is unconstitutionally vague under the due process clause if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595–96 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) ("[A] penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries . . . pursue their

personal predilections.'"); *Connally v. General Construction Company*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."). The allegations against Mr. Ligas in Count One of the Indictment fail in both respects.

A. *"Corruptly," as used in Section 1512(c)(2), is unconstitutionally vague.*

In *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), the Court of Appeals for this Circuit ruled that the word "corruptly" is prone to causing vagueness in a case concerning Section 1505, which criminalizes

> [w]hoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress –

18 U.S.C. § 1505.

Congress later added a definition of "corruptly" that is only applied to § 1505 via Section 1515(b), but in *Poindexter*, the court analyzed the text without that context. The court stated that the word "corruptly" in the text "must have some meaning, because otherwise the statute would criminalize all attempts to 'influence' congressional [proceedings] – an absurd result that Congress could not have intended in enacting the

statute." *Poindexter*, 951 F.2d at 377 (analyzing application of § 1505 as applied to making false statements to Congress).

The court also found that the dictionary alone did not make clear what that meaning is, as there are several dictionary definitions:

> "[C]orruptly" is the adverbial form of the adjective "corrupt," which means "depraved, evil: perverted into a state of moral weakness or wickedness . . . of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." A "corrupt" intent may also be defined as "the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others."

*Id.* at 378 (quoting *United States v. North*, 910 F.2d 843, 881–82 (D.C. Cir. 1990)).

Poindexter argued that "so defined, the term 'corruptly' is vague as used in § 1505." *Id.* (emphasis omitted). Mr. Ligas argues that, so defined, "corruptly" as used in § 1512 is as well.

The Court of Appeals acknowledged, and this Court must as well, that "on its face, the word 'corruptly' is vague; that is, in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'" *Id.* And, just as the court found that "corruptly influencing" a congressional inquiry "does not at all clearly encompass lying to Congress, which is, by way of contrast, clearly a violation of § 1001," *id.*, this Court should acknowledge that the conduct alleged in the instant Indictment — which also would clearly violate another statute (40 U.S.C. § 5104) — does not clearly fall within "corruptly . . . otherwise obstructing, influencing, or impeding" an official proceeding, using the dictionary definitions of "corruptly." That is because "[t]he various dictionary definitions of the adjective 'corrupt'" are themselves vague. *Id.* "Words like

'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific – indeed they may be less specific – than 'corrupt.'" *Id*. at 379. Because of this, the Court of Appeals for this Circuit found the word "corruptly" as used in Section 1505 "too vague to provide constitutionally adequate notice that it prohibits lying to the Congress." *Id.*

Applying the logic of *Poindexter*, the only way the use of the word in Section 1512 can avoid the same fate is if the text or other context "clearly indicates a more specific meaning of the term 'corruptly,'" and Mr. Ligas's "conduct comes within that meaning." *Id*. (considering whether the use of the word, the legislative history of § 1505, or judicial gloss on the statute provided a clear indication of a more specific meaning of the word in that statute, and ultimately concluding that it did not).

In *Poindexter*, the court first considered whether the usage of the word "corruptly" gave it more definition. *Id*. The court noted that

> the verb "corrupt" may be used transitively ("A corrupts B," i.e., "A causes B to act corruptly") or intransitively ("A corrupts," i.e., "A becomes corrupt, depraved, impure, etc."). So too, the adverbial form "corruptly" may have either the transitive or the intransitive sense. *See* 3 Oxford English Dictionary 974 (2d ed. 1989) ("corruptly" may mean either "by means of corruption or bribery," i.e., by means of corrupting another, or acting oneself "in a corrupt or depraved manner").

*Id.* But the court found that this analysis did not evade the vagueness in the word itself because

> either a transitive or an intransitive interpretation would still be unconstitutionally vague . . . if more specific content is not given to the word "corruptly." Reading "corruptly" to prohibit one from influencing another to act "immorally" or "improperly" provides no more guidance than does reading it to prohibit one from acting "immorally" or "improperly" oneself.

*Id*.

The same issue is presented here: No matter how "corruptly" is used in Section 1512(c)(2)—transitively or intransitively—the word lacks definition and remains too vague to provide constitutionally-required notice.

> B. *The emerging definitions of "corruptly" in this District demonstrate how vague the term is.*

Courts in this district do not disagree that, in the abstract, "corruptly" is somewhat vague, and acknowledge that many of words often used to define it are of little help. *See, e.g.*, Memorandum Opinion, Judge Friedrich, *United States v. Sandlin, et al.*, No. 21-CR-88 (DLF), 2021 WL 5865006 (D.D.C. December 10, 2021) [hereinafter "Sandlin mem. op.] *Sandlin* mem. op. at *12 ("But defining 'corruptly' to involve 'wrongfulness' presents a closer question because it may be subject to the same infirmities that *Poindexter* found in the words 'immoral' and 'improper.'") (citing *Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991)); *United States v. Caldwell et al.*, No. 1:21-CR-28 (APM), 2021 WL 6062718 (D.D.C. Dec. 20, 2021) [hereinafter "*Caldwell* mem. op."] *Caldwell* mem. op. at *9 (noting that *Poindexter* provided that "the word 'corruptly' is vague" and that, "in absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'"); *United States v. Mostofsky*, No. 1:21-CR-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021) [hereinafter "*Mostofsky* mem. op."] *Mostofsky* mem. op. at *10 (adopting reasoning of both *Sandlin* mem. op. and *Caldwell* mem. op.).

These courts have found that that judicial gloss provides further, and sufficient, definition to the word "corruptly." But they do not agree on what that gloss provides. All appear to agree that "corruptly" requires proof of intent to obstruct an official proceeding,

and that there must be some nexus, meaning a relationship in time, causation, or logic, between the defendant's actions and the official proceeding in question. But they do not all agree on the rest of the definition of "corruptly," nor do they arrive at their conclusion the same way.

Judicial gloss provides notice that "corruptly" requires proof of acting "wrongfully." *Sandlin* mem. op. at \*11– 13. That court found that "in considering the meaning of 'corruptly' (or wrongfully), courts have drawn a clear distinction between lawful and unlawful conduct," drawing "a line that is consistent with the definition of 'wrongful': '[t]hat is contrary to law, statute, or established rule.'" *Id.* at \*12–13 (quoting *Wrongful*, def. 3(a), *Oxford English Dictionary* (2d ed. 1989)). According to this Court, "the ordinary meaning of 'wrongful,' along with the judicial opinions construing it, identify a core set of conduct against which § 1512(c)(2) may be constitutionally applied— 'independently criminal' conduct . . . that is 'inherently malign,'" in addition to being intended to obstruct a proceeding with which it has a nexus. *Id.* at \*13. Thus, the Court concluded that the statute is not vague as applied against the defendants accused of illegal conduct intended to obstruct an official proceeding, at least so long as their conduct is inherently malign. *Id.* That Court allowed that more conduct may fall within the definition of "corrupt," but declined to determine its outer limits. *Id.*

In the *Nordean* case, Judge Kelly appeared to follow the logic of *Sandlin*, concluding that acting "corruptly" means at least "intentionally" and "wrongfully," and that the "unlawful means" the defendants allegedly used would qualify. *United States v. Nordean, et al.*, No. 1:21-CR-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021) [hereinafter "*Nordean*

mem. op."] *Nordean* mem. op. at *10. However, Judge Kelly seemed to be more open to the notion that unlawful purposes, as opposed to unlawful means (such as breaking the law), can satisfy the "wrongfulness" prong perceived as a limitation on the meaning of "corrupt" in section 1512(c)(2). *Nordean* mem. op. at *11.

In *Mostofsky*, Judge Boasberg also closely followed the *Sandlin* court's rationale. However, that court interpreted *Sandlin* to stand for the proposition that "corruptly" *requires* "that defendants acted '*unlawfully*, and with the intent to obstruct[,]' impede, or influence an official proceeding." *Mostofsky* mem. op. at *11 (emphasis added) (alteration in original).

Judge Mehta took yet another view of what the judicial gloss provides. In *Caldwell*, Judge Mehta concluded that case law provides notice that "corrupt" action involves "consciousness of wrongdoing" undertaken with specific intent to obstruct a congressional proceeding. *Caldwell* mem. op. at *10–11. But not all conscious wrongdoing suffices, per this opinion: Although preplanning to obstruct the vote count, wearing paramilitary gear, committing forcible trespass and assault, and coordinating movement through the Capitol would apparently qualify, "mere . . . trespass" apparently would not. *Id.* at *13. Thus, Judge Mehta perceived an extra limitation on what it means to act corruptly (*i.e.*, it includes consciously violating crimes at least more serious than trespass), just as this Court did (*i.e.*, it includes conduct that is both unlawful and "inherently malign").

In *Montgomery*, Judge Moss appeared to track Judge Mehta's reasoning, finding that case law preceding and following *Poindexter* provides notice that, to prove a

defendant acted corruptly, the government must establish intent to obstruct an official proceeding and "consciousness of wrongdoing." *United States v. Montgomery, et al.*, No. 1:21-CR-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021) [hereinafter "*Montgomery* mem. op."] *Montgomery* mem. op. at *20–21. However, Judge Moss allowed that there could be further requirements, including proof that the defendant used "some unlawful method" and acted "with a hope or expectation of . . . [a] benefit to oneself or a benefit to another person." *Id.* at *22 n.5.

These various spins on what it means to act "corruptly" under Section 1512(c)(2) demonstrate that the defendants in all of these cases were right that the law is not clear about what "corruptly" means, and that neither the text nor the judicial gloss on it provided them with sufficient notice that it could be applied against their conduct.

Finally, if recourse to any of the "traditional tools of statutory construction leaves any doubt" about the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512(c)(2), this Court could also invoke the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 547–48 (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000), in turn quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). As it was in *Yates*, "[t]hat interpretative principle is relevant here, where the Government urges a reading of [Section 1512(c)(2)] that exposes individuals to 20-year prison sentences" for obstructing any proceeding before Congress in any manner that it deems "corrupt." *Id.* at 548 (citing *Liparota v. United States*, 471 U.S. 419, 427 (1985)) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning

16

concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

In determining the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512, it would be "appropriate, . . . before [choosing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite," as it was when the Court interpreted Section 1519 in *Yates*. *Id.* (quoting *Cleveland*, 531 U.S. at 25, in turn quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 222 (1952)). Because Congress failed to do so, and the government has accused Mr. Ligas such that it is not "clear and definite" that his conduct violates Section 1512(c)(2), this Court should dismiss Count One of the Indictment against him.

**V. Conclusion.**

For all these reasons, and such others as may be advanced in further briefing on this motion and a hearing on this matter, Mr. Ligas respectfully requests that the Court dismiss Count One of the Indictment.

Respectfully Submitted,

FEDERAL DEFENDER PROGRAM
Northern District of Illinois
John F. Murphy,
Executive Director

By:

_____
Piyush Chandra
Attorney for Lawrence Ligas

PIYUSH CHANDRA
FEDERAL DEFENDER PROGRAM
Northern District of Illinois
55 East Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8337