**IN THE**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>v.<br><br><br>LAWRENCE LIGAS<br>Defendant-Movant. | )<br>)<br>)<br>) **Case No. 1:21-cr-00731**<br>) **Hon. Rudolph Contreras**<br>)<br>)<br>)<br>) |

## DEFENDANT-MOVANT'S COMBINED MOTION FOR NARROWLY TAILORED

## EQUITABLE EXPUNGEMENT, RECORDS CORRECTION, AND

## SEALING-RELATED RELIEF

*(Arising From Extraordinary and Disproportionate Collateral Consequences*
*of the January 6 Prosecution)*

Defendant-Movant Lawrence Ligas ("Ligas"), proceeding pro se, respectfully moves this Court for narrowly tailored equitable expungement, records-correction, sealing-related, and ancillary relief arising from continuing collateral consequences of the above-captioned criminal proceedings, which were dismissed with prejudice on January 21, 2025.

This motion does not seek to relitigate the merits of the dismissed prosecution, initiate a civil damages action, or obtain a judicial declaration of innocence. It seeks only the minimum relief necessary to address continuing reputational, professional, financial, psychological, constitutional, and records-centered harms caused by the continued maintenance, indexing, dissemination, or uncorrected use of prosecution-related records.

This motion follows the May 20, 2026 minute order entered in the Northern District of Illinois — Case No. 1:25-cv-15719, Hon. Beth W. Jantz — denying without prejudice certain expungement-related filings and directing that Ligas may refile such motions in the charging District, D.D.C. Ligas now seeks relief from this Court, which is most directly connected to the criminal complaint, arrest warrant, charging instruments, competency-related proceedings, and court-controlled records at issue.

RECEIVED

JUN 08 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## I. INTRODUCTION

1. This motion arises directly from the District of Columbia criminal proceedings, including the November 29, 2021 sealed complaint, arrest warrant, statement of facts, charging instruments, superseding charging instruments, competency-related proceedings, motions in limine, obstruction-related litigation following Fischer v. United States, 603 U.S. 134 (2024), delayed investigative disclosures, and the Government's January 21, 2025 dismissal with prejudice.

2. Ligas does not seek generalized equitable leniency. He seeks narrowly tailored equitable relief directed to concrete, records-centered injuries and continuing collateral consequences arising from the public availability, retention, indexing, and dissemination of prosecution-related records.

3. The requested relief is limited to the minimum necessary to mitigate continuing reputational, professional, financial, and psychological harm caused by the continued maintenance, dissemination, and indexing of those records.

4. This case presents unusual and extraordinary circumstances: the prosecution was dismissed with prejudice after years of extended proceedings, yet associated records continue to impose concrete collateral consequences disproportionate to Ligas's individualized conduct and the ultimate disposition of the case.

5. The prosecution record, arrest-warrant materials, and investigative narrative contain stigmatizing or misleading characterizations that are unnecessary to preserve any legitimate law-enforcement interest in unqualified form, and that continue to impair Ligas's ability to obtain professional opportunities, maintain financial relationships, protect retirement planning, and restore his reputation.

6. The proceedings evolved beyond ordinary law-enforcement treatment. Ligas's January 5–6, 2021 conduct arose from independent civic and voter-integrity advocacy activity materially distinguishable from organized violent conduct associated with other January 6 prosecutions.

7. References in arrest-warrant materials and investigative filings to Ligas's 2017 whistleblower activity and 2019 election-integrity advocacy created misleading and stigmatizing implications inconsistent with his actual conduct and history.

8. The cumulative effects of the prolonged prosecution, escalating charging instruments, competency-related proceedings, severe reputational harm, financial instability, and continuing uncertainty caused periods of profound psychological distress, emotional deterioration, and despair — circumstances intensified by widely reported mental-health deterioration and suicide-related tragedies involving multiple January 6 defendants.

9. Notwithstanding the Supreme Court's June 28, 2024 decision in Fischer v. United States, 603 U.S. 134 (2024), which materially narrowed the scope of 18 U.S.C. § 1512(c)(2), the Government continued pursuing obstruction-related prosecution theories and thereafter filed a Second Superseding Indictment on October 9, 2024 continuing Count One under 18 U.S.C. §§ 1512(c)(2) and 2.

10. The filing of the Second Superseding Indictment after Fischer materially increased the burden, stigma, and continuing collateral consequences associated with the prosecution record.

11. Ligas therefore seeks only such relief as is necessary to correct, seal, annotate, or limit dissemination of specific court-controlled or related records — not broad destruction of all governmental records and not a damages adjudication within this criminal docket.

## II. JURISDICTION, VENUE, AND EQUITABLE AUTHORITY

12. This Court exercised jurisdiction over the underlying criminal proceedings pursuant to 18 U.S.C. § 3231.

13. Venue is proper in this Court because the criminal complaint, arrest warrant, statement of facts, charging instruments, superseding indictments, competency-related proceedings, motions in limine, dismissal proceedings, docket entries, and related court-controlled records originated from and remain associated with this Court's criminal docket.

14. This Court has equitable authority, in appropriate extraordinary circumstances, to consider narrowly tailored relief affecting records created in this criminal proceeding, including relief necessary to vindicate important legal interests and to mitigate continuing collateral consequences. See Doe v. Webster, 606 F.2d 1226 (D.C. Cir. 1979); Livingston v. United States Dep't of Justice, 759 F.2d 74 (D.C. Cir. 1985); Menard v. Saxbe, 498 F.2d 1017 (D.C. Cir. 1974); Sullivan v. Murphy, 478 F.2d 938 (D.C. Cir. 1973).

15. Federal courts possess limited inherent equitable authority to address extraordinary circumstances involving continuing reputational, constitutional, and records-centered harms. The power to order expungement or related relief is tied to the protection of important legal rights, the balancing of equities, and a logical relationship between the injury alleged and the remedy requested. See Doe, 606 F.2d at 1230–31; Livingston, 759 F.2d at 78; Menard, 498 F.2d at 1023.

16. Ligas acknowledges that equitable expungement is limited and fact-specific, and that reputational harm alone is ordinarily insufficient absent extraordinary circumstances or a concrete legal or equitable injury. Ligas therefore seeks narrowly tailored records-correction, sealing, annotation, non-dissemination, and related equitable relief directed to specific continuing collateral consequences arising from the records at issue.

17. This motion is filed without prejudice to any separate civil action, administrative claim, or other remedy available under law. The relief sought here is equitable and records-centered, not a request that this Court adjudicate civil damages within the criminal docket.

## III. PROCEDURAL BACKGROUND

18. On November 29, 2021, a sealed criminal complaint was filed against Ligas in this Court, accompanied by a sealed statement of facts and related arrest-warrant materials. The Government also moved to seal the matter on that date.

19. On December 1, 2021, federal agents executed the District of Columbia arrest warrant at Ligas's residence in Chicago, Illinois.

20. On December 3, 2021, Fed. R. Crim. P. 5(c)(3) documents were transmitted from the United States District Court for the Northern District of Illinois to this Court.

21. On December 13, 2021, an Information was filed in this Court.

22. The matter then proceeded through multiple status conferences, continuances, discovery proceedings, protective-order proceedings, superseding charging instruments, competency-related proceedings, and obstruction-related litigation.

23. On June 13, 2022, the matter was reassigned to the Honorable Rudolph Contreras.

24. On July 27, 2022, the parties informed the Court that Ligas had rejected a proposed plea agreement and intended to proceed toward trial.

25. On November 9, 2022, Ligas consented to proceed with a bench trial.

26. On January 3, 2024, a Superseding Indictment was filed.

27. On February 27, 2024, the Court scheduled trial proceedings.

28. On April 30, 2024, the Court granted a defense oral motion to vacate the jury-trial setting and convert the matter to a bench trial, and further granted defense requests relating to mental-health and competency-related information.

29. On June 28, 2024, the Supreme Court issued Fischer v. United States, 603 U.S. 134 (2024), materially narrowing the scope of 18 U.S.C. § 1512(c)(2).

30. Following Fischer, obstruction-related prosecution theories against Ligas were not dismissed or withdrawn.

31. On September 23, 2024, the Court questioned whether continued litigation concerning Count One remained necessary following Fischer and ordered the Government to advise whether it intended to continue pursuing the § 1512(c)(2) charge.

32. On October 9, 2024, the Government filed a Second Superseding Indictment continuing Count One under 18 U.S.C. §§ 1512(c)(2) and 2.

33. On November 18, 2024, the Court entered an order relating to competency-evaluation proceedings.

34. Trial was scheduled for December 16, 2024.

35. On December 2, 2024, the Court granted an unopposed motion to continue the scheduled trial and vacated the prior pretrial order.

36. On December 13, 2024, the Court granted several unopposed motions in limine narrowing anticipated evidentiary presentation and limiting certain areas of anticipated cross-examination and defense argument.

37. On or about December 18, 2024, competency-related and forensic evaluation materials were before the Court or otherwise active in the proceedings. Those materials documented psychological, neurological, and cognitive context relevant to the prosecution's repeated intent-based allegations.

38. On or about December 18, 2024, Ligas received delayed notification from Google indicating that the Federal Bureau of Investigation had previously compelled disclosure of information associated with his account pursuant to sealed legal process accompanied by a nondisclosure order.

39. On January 16, 2025, the parties appeared for a further status conference at which additional pretrial matters and a joint pretrial statement were addressed before the Government subsequently moved to dismiss the matter with prejudice.

40. On January 21, 2025, the Government moved to dismiss the prosecution with prejudice, and the Court granted that motion the same day.

41. Although dismissal with prejudice was legally significant, the prosecution terminated before Ligas received a merits-based adjudication of the allegations reflected in the charging record.

42. On May 20, 2026, after related expungement-related filings had been pursued in the Northern District of Illinois, Magistrate Judge Beth W. Jantz denied those motions without prejudice and directed that Ligas may refile in the charging District, D.D.C. This motion follows that procedural direction.

## IV. FACTUAL ALLEGATIONS REGARDING JANUARY 5–6, 2021

43. Ligas traveled independently to Washington, D.C. and engaged in civic and voter-integrity advocacy activity as a private citizen.

44. Ligas was not affiliated with organized extremist groups, did not coordinate unlawful activity with organized violent actors, did not assault law-enforcement officers, did not destroy property, did not enter congressional chambers, and did not engage in coordinated violent conduct.

45. Ligas's presence inside the Capitol was limited in duration and substantially confined to the Rotunda area, after being waved inside amid chaotic and rapidly evolving crowd conditions near the East-side entrance.

46. By the time Ligas entered the Rotunda, congressional proceedings had already recessed or entered lockdown status, and his conduct was materially distinguishable from organized violent or coordinated actors associated with other January 6 prosecutions.

47. Crowd movement near the East-side entrance and Rotunda area was influenced by compression, loud crowd-control devices, airborne irritants, confusion, and rapidly evolving conditions.

48. Ligas never personally received an individualized law-enforcement warning or dispersal instruction at crowd-control barriers, near the East-side entrance, on the East Terrace, or inside the Rotunda before the deployment of crowd-control devices, flash-bang-style munitions, or the onset of surrounding chaotic crowd movement.

49. Ligas experienced respiratory distress, confusion, and involuntary movement associated with surrounding crowd conditions.

50. Ligas's conduct on January 5 and January 6 reflected restraint, de-escalation efforts, civic engagement, and voter-integrity advocacy materially distinguishable from organized violent conduct associated with other January 6 prosecutions.

51. Available evidentiary materials reflect conduct consistent with de-escalation efforts and communication with demonstrators using religious and civic language inconsistent with extremist intent or violent objectives.

52. The criminal-process narrative did not adequately distinguish between Ligas's independent civic presence amid crowd compression and confusion and conduct by materially more aggressive, organized, or confrontational actors.

53. That failure of differentiation became especially damaging because public and official narratives surrounding January 6 tended to collapse materially distinct conduct into generalized categories of wrongdoing, thereby magnifying the collateral consequences of every retained prosecution record.

54.    Certain unidentified individuals near the East-side entrance engaged in provocative, antagonistic, escalatory, and physically aggressive conduct materially inconsistent with Ligas's individualized nonviolent conduct.

55. One such individual wearing a gray helmet and red jacket physically shoved or pressed Ligas in the direction of a United States Capitol Police officer amid chaotic crowd conditions, thereby contributing to misleading visual impressions and subsequent generalized narratives inconsistent with Ligas's actual conduct and history.

56. Subsequent investigative and public narratives improperly associated Ligas with individuals and organizations with whom he had no affiliation, including generalized Proud Boys-related characterizations inconsistent with his actual conduct, history, and individualized circumstances.

57.    While inside the Rotunda, Ligas observed conduct by certain individuals that appeared coordinated, provocative, or inconsistent with surrounding demonstrator behavior — conduct not fully reflected in subsequent narratives concerning his own presence.

58.    The extraordinary public saturation, reputational stigma, and generalized narratives surrounding January 6 proceedings contributed to the risk that Ligas's individualized conduct and circumstances would be conflated with materially more serious or organized conduct associated with other prosecutions. See, e.g., United States v. Martin (reflecting materially different judicial assessments of individualized January 6 conduct, intent, and circumstances).

## V. INVESTIGATION, CHARGING, AND CONTINUING RECORDS CONSEQUENCES

59.    Portions of the criminal complaint relied upon publicly available reporting, location data, video footage, and information attributed to a confidential witness. The resulting investigative narrative did not accurately reflect Ligas's limited, individualized, and otherwise nonviolent conduct as described herein.

60.    The inability to meaningfully test or confront aspects of the confidential-witness-derived narrative contributed to continuing perceptions of investigative overbreadth and disproportionate prosecutorial escalation.

61. References in arrest-warrant materials and investigative filings to Ligas's 2017 whistleblower activity and 2019 election-integrity advocacy created misleading and stigmatizing implications inconsistent with his actual conduct and history.

62.    The investigation and prosecution evolved through disproportionate escalation, continuing investigative expansion, and stigmatizing characterizations inconsistent with Ligas's actual conduct.

63.    The prosecution repeatedly advanced intent-based characterizations — including references to "knowingly" and alleged obstructive intent in charging instruments and arrest-related materials — despite competency-related proceedings, documented psychological and neurological conditions, and individualized conduct materially distinguishable from organized violent actors.

64.    Competency-related and forensic evaluation materials materially complicated simplistic intent-based characterizations advanced during the prosecution and further demonstrated extraordinary psychological, neurological, and stress-related circumstances relevant to equitable consideration of the continuing collateral consequences alleged herein.

65. The post-Fischer continuation of obstruction-related theories, followed by the Second Superseding Indictment filed October 9, 2024, materially intensified litigation pressure, uncertainty, reputational harm, emotional distress, and collateral consequences associated with the prosecution.

66. Fischer v. United States, 603 U.S. 134 (2024), materially narrowed the obstruction theory reflected in the charging record. The Government's subsequent continuation of obstruction-related charges and filing of the Second Superseding Indictment after Fischer increased the burden, stigma, and continuing collateral consequences associated with the records at issue. Ligas does not allege that Fischer itself creates a right to expungement; rather, Fischer strengthens the equities supporting narrowly tailored records-related relief, including correction, annotation, sealing, or limitation of dissemination where uncorrected records continue to preserve an over-inclusive, misleading, or disproportionately stigmatizing prosecution theory.

67. The delayed Google disclosure materially intensified Ligas's perception of continuing surveillance, reputational injury, emotional distress, privacy-related concern, and prosecution-related pressure.

68. The timing and scope of investigative demands directed toward personal digital-account information, arriving shortly after competency-related proceedings, materially intensified Ligas's perception that the prosecution had evolved beyond ordinary law-enforcement treatment associated with his individualized alleged conduct and circumstances.

69. The continuing existence and accessibility of prosecution-related records impairs Ligas's professional opportunities, reputation, community standing, financial stability, retirement planning, and banking relationships.

70. Banking and financial red-flag consequences associated with the prosecution materially impaired financial relationships, economic stability, investment opportunities, and long-term financial planning.

71. Court-controlled and related records continue to suggest unresolved culpability, ongoing criminal suspicion, or reputational infamy beyond what the dismissal with prejudice permits.

72. The harm is not abstract. The retained records intersect with employment screening, professional reputation, banking relationships, financial review processes, public-search results, and ordinary efforts to rebuild Ligas's standing after dismissal with prejudice.

73. The continued presence of uncorrected or unannotated records leaves the public record incomplete, preserving allegations, escalation, and stigmatizing investigative characterizations without a corresponding merits-based adjudication resolving those allegations in Ligas's favor.


## VI. DECEMBER 1, 2021 ARREST AND EXECUTION OF WARRANT

74. On December 1, 2021, federal agents executed the District of Columbia arrest warrant at Ligas's Chicago residence.

75. Agents provided no meaningful warning or opportunity to voluntarily respond before breaching the residence.

76. Multiple firearms were directed toward Ligas at close range during the execution of the warrant.

77. The sudden forced entry, overlapping commands, tactical presence, and aggressive execution caused acute physiological distress, confusion, and disorientation.

78. The execution of the warrant aggravated preexisting PTSD-related, neurological, and brachial-plexus symptoms.

79. Ligas experienced prolonged physiological distress — including involuntary urination — consistent with severe fight-or-flight nervous-system dysregulation after multiple firearms had been directed toward his face and head.

80. FBI Agent #2 responded in a dismissive or mocking manner while Ligas remained in a visibly distressed condition.

81. Agents made statements to the effect that property inside the residence would be damaged if Ligas did not cooperate.

82. The conduct of certain agents reflected unnecessary intimidation and insensitivity toward Ligas's visibly distressed condition.

83. These arrest-execution allegations are included not to duplicate separate civil-rights claims, but to establish the concrete trauma, records consequences, and psychological context that contributed to the continuing collateral consequences for which narrowly tailored equitable relief is requested.


## VII. COMPETENCY, MENTAL-HEALTH, AND PHYSIOLOGICAL CONTEXT

84. Competency-related proceedings and evaluations documented longstanding cognitive, neurological, and psychological difficulties, including PTSD-related symptoms, anxiety, executive-function difficulties, panic symptoms, neurological impairment, and impaired functioning under severe stress.

85. The Court received competency-related materials shortly before the Government ultimately moved to dismiss the prosecution with prejudice.

86. The prolonged prosecution materially aggravated Ligas's preexisting psychological and neurological symptoms.

87. The prosecution and its continuing public accessibility have caused documented psychological distress and exacerbated preexisting conditions, as reflected in competency-related proceedings and related forensic materials.

88. The cumulative effects of the prolonged prosecution, escalating litigation posture, competency-related proceedings, reputational injury, financial instability, and continuing collateral consequences caused periods of profound psychological distress and emotional despair.

89. These circumstances are relevant to the balancing of equities because they demonstrate concrete, continuing, records-centered injury rather than abstract reputational dissatisfaction.


## VIII. D.C. CIRCUIT EQUITABLE EXPUNGEMENT AND RECORDS-CORRECTION FRAMEWORK

90. The D.C. Circuit recognizes that federal courts may, in appropriate circumstances, fashion equitable relief to protect important legal rights affected by criminal-process records. The remedy is limited, fact-specific, and must bear a logical relationship to the injury alleged.

91. In Doe v. Webster, 606 F.2d 1226 (D.C. Cir. 1979), the D.C. Circuit recognized that expungement authority is part of the federal courts' general equitable power to fashion appropriate remedies to protect important legal rights, while emphasizing that there must be a logical relationship between the injury and the requested remedy. Id. at 1230–31.

92. In Livingston v. United States Dep't of Justice, 759 F.2d 74 (D.C. Cir. 1985), the D.C. Circuit treated equitable expungement as a remedy requiring a balancing of equities and careful attention to the relationship between the alleged legal wrong, the record retained, and the continuing consequences of that record. Id. at 78.

93. In Menard v. Saxbe, 498 F.2d 1017 (D.C. Cir. 1974), the D.C. Circuit recognized the importance of correcting or limiting records where continued retention or dissemination of criminal-process information would perpetuate a concrete legal injury or a misleading governmental record. Id. at 1023.

94. In Sullivan v. Murphy, 478 F.2d 938 (D.C. Cir. 1973), the D.C. Circuit recognized equitable relief where mass-arrest or criminal-process records created continuing legal consequences requiring judicial intervention to preserve important rights.

95. In Abdelfattah v. U.S. Dep't of Homeland Security, 787 F.3d 524 (D.C. Cir. 2015), the D.C. Circuit confirmed that expungement is a remedy available to vindicate statutory or constitutional rights, reinforcing that the relief must be connected to a recognized legal or equitable injury rather than generalized dissatisfaction with the existence of a record.

96. Ligas's request is framed within that limited doctrine. He does not seek broad destruction of all governmental records. He seeks relief logically related to the records causing continuing harm: correction, annotation, sealing, non-dissemination, or other tailored limitations concerning records that continue to imply unresolved culpability, ongoing criminal suspicion, or stigmatizing allegations inconsistent with the Government's dismissal with prejudice.

97. The balancing of equities favors at least targeted relief because the prosecution was dismissed with prejudice after years of litigation, yet the records continue to produce concrete professional, financial, reputational, psychological, and records-centered consequences. At the same time, the requested relief can be tailored to preserve legitimate governmental interests while preventing unnecessary and misleading collateral harm.

98. The Court therefore need not adopt a broad theory of expungement to grant meaningful relief. A tailored order correcting, annotating, sealing, or limiting unnecessary dissemination of specified records would preserve legitimate institutional interests while addressing the continuing injury alleged herein.

## IX. CONTINUING COLLATERAL CONSEQUENCES AND LOGICAL RELATIONSHIP TO REQUESTED RELIEF

99. Although the prosecution was dismissed with prejudice, the dismissal did not provide a merits-based adjudication of the allegations reflected in the charging record.

100. Ligas suffers continuing reputational injury, economic loss, emotional distress, diminished professional opportunities, banking-related harms, disruption of investment and retirement planning, and ongoing collateral consequences associated with the prosecution.

101. Generalized public narratives associated with January 6 continue to create stigma and reputational injury disproportionate to Ligas's individualized alleged conduct.

102. The continuing accessibility and dissemination of prosecution-related information impairs Ligas's ability to restore his reputation and professional standing.

103. There is a logical relationship between the injuries alleged and the remedies requested: the ongoing harms flow from court-controlled records, arrest-related materials, docket entries, charging instruments, competency-related records, and related records maintained, indexed, or disseminated without adequate annotation, correction, sealing, or limitation.

104. Ligas does not seek broad destruction of all records. He seeks records-correction, annotation, sealing, non-dissemination, and related relief only to the extent necessary to prevent continued records-centered harm beyond what equity permits following dismissal with prejudice.

105. Narrower remedies should be considered before broader expungement, including: annotation of records to reflect dismissal with prejudice; sealing of sensitive competency-related materials; correction of inaccurate or misleading descriptions; and limits on unnecessary dissemination of stigmatizing records or characterizations.

## X. EQUITABLE GROUNDS FOR NARROWLY TAILORED RELIEF

106. Ligas incorporates by reference all preceding paragraphs.

107. Federal courts possess limited inherent equitable authority to address extraordinary circumstances involving continuing reputational, constitutional, and records-centered harms. Doe v. Webster, Livingston, Menard, Sullivan, and Abdelfattah collectively recognize balancing-of-equities principles and equitable relief appropriate to extraordinary collateral consequences.

108. The D.C. Circuit's equitable-expungement framework requires a careful relationship between the injury alleged and the remedy requested. Ligas therefore seeks relief directed to the records and records consequences causing the continuing harm, not a generalized declaration of innocence or damages award in this criminal docket.

109. The extraordinary circumstances presented include: dismissal with prejudice after years of prosecution; the post-Fischer continuation of obstruction-related theories; the October 9, 2024 Second Superseding Indictment; competency-related proceedings; delayed investigative disclosures; motions in limine narrowing anticipated defense presentation; generalized January 6 stigma; and ongoing records-centered injury.

110. The continuing records-centered consequences are disproportionate to Ligas's individualized conduct and circumstances.

111. The cumulative prosecution process — escalating charging instruments, continued obstruction-related prosecution following Fischer, competency-related proceedings, narrowing evidentiary rulings, delayed investigative disclosures, and enduring reputational consequences — collectively produced extraordinary collateral harms materially beyond ordinary law-enforcement treatment of Ligas's individualized alleged conduct.

10

112. Ligas seeks relief narrowly tailored to court-controlled records and related records within the Court's lawful authority, including sealing, annotation, correction, or limitations sufficient to prevent continuing records-centered harms while preserving legitimate governmental interests.

113. Administrative tort claim materials relating to certain matters referenced herein were submitted to the Department of Justice on or about December 18, 2025.

114. The FBI responded by letter dated February 9, 2026, stating that the December 18, 2025 correspondence had been received but that a completed Standard Form 95 had not been enclosed.

115. Ligas received that FBI response on or about March 23, 2026 and promptly cured the omission by submitting a completed Standard Form 95 signed March 31, 2026.

116. A follow-up FTCA letter dated June 8, 2026 confirmed and harmonized the administrative presentment chronology, including the December 18, 2025 submission, the March 23, 2026 receipt of the FBI's response, and the March 31, 2026 re-presentment with the completed Standard Form 95.

117. The administrative materials were submitted in an abundance of caution and as an alternative procedural path to ensure the Government had notice of the tort theories and claimed injuries associated with the matters referenced in this motion.

118. The underlying events referenced in the administrative materials include the execution of the arrest warrant at Ligas's residence, the conditions of his arrest and transport, the physical and psychological effects he experienced, and the continuing collateral consequences arising from the prosecution and its associated records.

119. The administrative presentment was intended to preserve Ligas's tort claims while this Court considers the narrowly tailored equitable and records-related relief requested in this motion.

120. Ligas reserves the right to amend or supplement the administrative submission as additional information becomes available, including information obtained through litigation, record review, and future disclosures.

121. The administrative claim and this motion are complementary but procedurally distinct: the former provides FTCA presentment and notice; the latter seeks equitable relief directed to court-controlled records and related materials.

122. Ligas has pursued these matters diligently and in good faith, with the objective of preserving all available remedies and avoiding unnecessary prejudice from timing disputes or administrative uncertainty.

123. The Government's continuation of the prosecution after Fischer v. United States, 603 U.S. 134 (2024), materially intensified the reputational, financial, and psychological harms associated with the records at issue.

124. The continuation of the prosecution record after dismissal with prejudice has caused, and continues to cause, confusion, stigmatization, and professional impairment not cured by the fact of dismissal alone.

125. Many viewers of the record — including prospective employers, professional contacts, and members of the public — do not distinguish between a dismissal with prejudice and a finding of guilt. The raw record therefore continues to inflict continuing collateral consequences.

126. The Court has inherent equitable authority to grant targeted relief no broader than necessary to prevent such continuing harms while preserving legitimate governmental interests in record retention.

127. The requested relief may include sealing, annotation, correction, or non-dissemination of specific records or index entries, as appropriate to the particular source of the continuing injury.

128. The Court may craft relief directed to the minimum number of records necessary to address the continuing harm, rather than ordering wholesale destruction or alteration of the historical record.

129. Narrow equitable relief is especially appropriate where the underlying prosecution terminated without a conviction and continued dissemination of uncontextualized records creates disproportionate collateral damage.

130. The continued presence of uncorrected records has impaired Ligas's ability to communicate accurately about the case in personal, professional, and public settings, because the available records can be misread as reflecting unresolved culpability — a misunderstanding exacerbated by the fact that some public references to January 6-related matters conflate indictments, plea agreements, dismissals, pardons, and other dispositions.

131. Ligas further alleges that the public record of these proceedings continues to be encountered by third parties without the full procedural context reflected elsewhere in the docket, including the Government's dismissal of the prosecution with prejudice on January 21, 2025.

132. Ligas alleges that publicly accessible charging instruments, arrest-related materials, docket entries, and related prosecution records may be reviewed in isolation from subsequent developments in the case and, as a result, may create inaccurate impressions regarding the ultimate disposition of the proceedings.

133. Ligas further alleges that prospective employers, professional contacts, financial institutions, and members of the public frequently encounter prosecution-related records through public databases, internet search results, media references, and secondary reporting that do not consistently provide equivalent prominence to the dismissal with prejudice.

134. Ligas alleges that this imbalance has contributed to continuing reputational injury, professional impairment, financial disruption, and other collateral consequences that persist notwithstanding the termination of the prosecution.

135. Ligas further alleges that the continuing injury identified herein arises principally from the maintenance, indexing, dissemination, and use of prosecution-related records rather than from any desire to relitigate the merits of the dismissed case.

136. Ligas does not seek destruction of historical records, revision of historical events, or a declaration of innocence through this motion. Rather, he seeks only such narrowly tailored relief as may be necessary to ensure that court-controlled records accurately reflect the procedural history and disposition of the proceedings.

137. Ligas further alleges that the equities favor consideration of limited records-related relief because the prosecution terminated without a conviction, yet prosecution-related records continue to generate significant collateral consequences.

138. Ligas alleges that the continuing accessibility of unannotated prosecution-related records creates a substantial risk that third parties will draw conclusions inconsistent with the actual procedural disposition of the case.

12

139. Ligas further alleges that narrowly tailored annotation, correction, contextualization, sealing, or other records-related relief may reduce those consequences while preserving legitimate governmental, historical, and institutional interests.

140. Ligas alleges that the procedural history of this matter — including extended pretrial proceedings, superseding charging instruments, competency-related proceedings, substantial pretrial litigation, and ultimate dismissal with prejudice — creates an unusual risk that the record may be misunderstood when reviewed without context.

141. Ligas further alleges that equitable relief directed toward specific court-controlled records would promote accuracy, fairness, and completeness in the public presentation of the proceedings while preserving the integrity of the judicial record.

142. Ligas therefore respectfully submits that the extraordinary circumstances described herein warrant consideration of narrowly tailored records-related relief designed to mitigate continuing collateral consequences while preserving legitimate governmental and public interests.


## XI. ALTERNATIVE FTCA ALLEGATIONS

143. Ligas incorporates by reference all preceding paragraphs as though fully set forth herein.

144. Administrative tort claim materials relating to certain matters referenced throughout this motion were transmitted to the Department of Justice on or about December 18, 2025.

145. The administrative submission was intended to provide notice of claims arising from the investigation, arrest, prosecution, and related injuries described in associated filings and supporting materials.

146. On or about March 23, 2026, Ligas received correspondence dated February 9, 2026 from the Department of Justice stating that a completed Standard Form 95 had not been included with the earlier administrative submission.

147. Ligas thereafter submitted a completed Standard Form 95 signed March 31, 2026, asserting a sum-certain claim and providing additional information concerning the nature and extent of the injuries alleged.

148. Follow-up correspondence concerning administrative presentment, supporting materials, and related matters was transmitted on June 8, 2026 to the Department of Justice and other appropriate governmental offices.

149. These administrative actions were undertaken to preserve rights, satisfy applicable administrative requirements, and provide appropriate notice of claims arising from the events described herein.

150. The allegations contained in this section are pleaded separately and in the alternative to the equitable, declaratory, expungement-related, records-correction, and records-centered theories asserted throughout this motion.

151. Ligas does not seek adjudication of FTCA damages through this criminal proceeding. These allegations are included solely to preserve chronology, procedural context, administrative presentment history, and the relationship between parallel proceedings arising from the same underlying events.

13

152. Nothing in this section should be construed as limiting, expanding, waiving, adjudicating, or otherwise affecting any rights, defenses, claims, remedies, administrative proceedings, or civil actions that may exist outside this criminal docket.

## XII. EQUITABLE TOLLING

153. Ligas incorporates by reference all preceding paragraphs as though fully set forth herein.

154. To the extent equitable tolling is relevant to any issue presented by this motion, extraordinary circumstances support such consideration.

155. Competency-related proceedings, traumatic brain injury, PTSD-related symptoms, aphasia, executive-function difficulties, neurological impairments, and other documented cognitive and psychological conditions materially affected Ligas's ability to fully protect and advance his legal interests during portions of the relevant period.

156. The pendency of the criminal proceedings, continuing prosecution-related obligations, competency-related litigation, and uncertainty concerning the ultimate disposition of the case further complicated Ligas's ability to pursue additional legal remedies and records-related relief.

157. Financial instability, emotional distress, reputational injury, and continuing collateral consequences associated with the prosecution materially contributed to delays in pursuing certain forms of relief.

158. Delayed investigative disclosures — including the notification concerning compelled disclosure of information associated with Ligas's Google account — further contributed to uncertainty regarding the scope of investigative activity and the factual circumstances relevant to potential claims and remedies.

159. The overlap among criminal proceedings, competency-related litigation, administrative presentment efforts, civil litigation, and records-related issues created an unusually complex procedural environment requiring substantial time and effort to navigate.

160. Ligas acted with reasonable diligence under the circumstances and pursued available remedies as his health, resources, procedural posture, and understanding of the relevant facts permitted.

161. Ligas does not seek tolling based upon any single circumstance alone. The cumulative effect of documented neurological conditions, psychological conditions, competency-related proceedings, ongoing prosecution, delayed disclosures, overlapping proceedings, and continuing collateral consequences provides equitable support for tolling to the extent necessary.

## XIII. PRAYER FOR RELIEF

WHEREFORE, Defendant-Movant Lawrence J. Ligas respectfully requests that this Court grant such relief as may be appropriate and equitable under the circumstances presented herein, including:

a. A declaration that the continuing collateral consequences arising from prosecution-related records associated with this matter warrant judicial consideration and equitable review;

b. An order exercising the Court's equitable authority to provide narrowly tailored records-related relief concerning specific court-controlled records associated with the prosecution, including records reflecting the criminal complaint, arrest-warrant materials, statement of facts, charging instruments, superseding charging instruments, competency-related proceedings, docket entries, minute orders, and related records, to the extent permitted by law;

c. An order directing that appropriate court-controlled records be corrected, annotated, sealed, or otherwise modified where necessary to ensure that such records do not continue to suggest unresolved culpability, continuing criminal suspicion, or reputational implications inconsistent with the Government's January 21, 2025 dismissal with prejudice;

d. To the fullest extent permitted by law, an order providing appropriate equitable relief concerning the dissemination, indexing, accessibility, or use of prosecution-related records where such relief is necessary to mitigate continuing records-centered injuries and collateral consequences;

e. An order directing that appropriate records reflect the existence of competency-related proceedings, subsequent legal developments, individualized conduct, and dismissal with prejudice, so that prosecution-related records are not viewed in isolation from material contextual information contained within the record;

f. An order directing such annotation, correction, contextualization, sealing, non-dissemination, or related relief as may be necessary to reduce continuing false-light implications, misleading characterizations, or disproportionate collateral consequences arising from prosecution-related records;

g. An order directing that any relief granted be narrowly tailored to preserve legitimate governmental, institutional, historical, and law-enforcement interests while mitigating the continuing records-centered injuries identified throughout this motion;

h. Such declaratory, ancillary, equitable, or records-related relief as the Court determines to be just, proper, and consistent with the equitable principles recognized by the D.C. Circuit; and

i. An award of costs or other relief authorized by law and deemed appropriate by the Court.

## XIV. CONCLUSION

For the foregoing reasons, Defendant-Movant Lawrence J. Ligas respectfully requests that this Court exercise its equitable authority to consider and grant narrowly tailored records-related relief sufficient to mitigate continuing records-centered injuries arising from the above-captioned prosecution.

The continuing harms described herein are directly connected to the maintenance, indexing, dissemination, accessibility, and use of prosecution-related records that continue to generate reputational, professional, financial, constitutional, and psychological collateral consequences despite the Government's January 21, 2025 dismissal with prejudice.

Prosecution-related records continue to preserve allegations, escalation, intent-based characterizations, and stigmatizing narratives without corresponding contextualization reflecting competency-related proceedings, individualized conduct, subsequent legal developments including Fischer v. United States, 603 U.S. 134 (2024), and the ultimate dismissal with prejudice by order of this Court.

Ligas does not seek to relitigate guilt or innocence, erase historical events, challenge the validity of every record associated with the proceedings, or obtain civil damages through this criminal docket. He seeks only such correction, annotation, sealing, non-dissemination, contextualization, or other narrowly tailored records-related relief as may be necessary to reduce continuing records-centered injuries and collateral consequences arising from specific court-controlled records and related prosecution materials.

The requested relief bears a direct and logical relationship to the injuries asserted because the continuing harms arise from the records themselves and from the manner in which those records continue to be maintained, indexed, accessed, disseminated, and used. The extraordinary circumstances presented by this case — including the prolonged prosecution, escalating charging instruments, competency-related proceedings, intent-based allegations, subsequent legal developments, delayed investigative disclosures, continuing collateral consequences, and ultimate dismissal with prejudice — support careful consideration of narrowly tailored equitable relief.

Ligas therefore respectfully requests that the Court grant such declaratory, equitable, ancillary, records-correction, records-annotation, sealing-related, non-dissemination, and other narrowly tailored relief as justice and equity require.

Respectfully submitted,

/s/ _____
LAWRENCE J. LIGAS
Pro Se

Date: June 8, 2026

16